**STATE of Missouri, Respondent,**

v.

**Joseph R. GAINES III, Appellant.**

**No. WD 70896.**

Missouri Court of Appeals, Western District.

May 4, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2010.

Application for Transfer Denied Aug. 31, 2010.

Brian R. Barjenbruch, Richard "Jake" Jacoby and Michael R. Taylor, Independence, MO, for appellant.

Shaun J. Mackelprang and Jayne T. Woods, Jefferson City, MO, for respondent.

Before Division One: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Joseph Gaines appeals from the trial court's judgment finding him guilty of two counts of child molestation in the first degree and one count of statutory sodomy in the first degree after a jury trial. Gaines alleges that the trial court erred: (1) in limiting the scope of his cross-examination of D.T. ("Mother"); (2) in admitting the videotaped interview of J.T.; (3) in admitting expert testimony; (4) in denying his motion for judgment of acquittal at the close of the State's evidence; (5) in denying his motion for judgment of acquittal at the close of all evidence; and (6) in overruling his objection to the State's closing argument. We affirm.

**Factual and Procedural History**

Sisters J.T. and E.T. are Gaines's granddaughters through his adopted daughter, Mother. At the time of trial, J.T. was thirteen and E.T. was fifteen. J.T. and E.T. frequently visited Gaines and his wife at their home. When J.T. was approximately nine years old, Gaines touched the inside and outside of her vagina with his penis, fingers, and tongue. Gaines also made J.T. touch his penis with her hand. J.T. estimated that this conduct occurred thirty to forty times and generally about every two weeks at Gaines's home. On some occasions, Gaines would take J.T. out in his truck or on his motorcycle and touch her vagina. Gaines told J.T. that Mother would go to jail if J.T. told anybody about the abuse.

One day, J.T. was watching a television show about molestation with Mother. J.T. asked Mother to explain what molestation meant. Mother explained that molestation is when "someone touches you in the wrong spots, in the private spot." J.T. responded that Gaines had done that to her. Mother called 911. J.T. was interviewed at the Children's Advocacy Center in St. Joseph. J.T.'s interview was videotaped.

E.T. is deaf and attended the Missouri School for the Deaf in Fulton, Missouri, where she resided during the week. The weekend following J.T.'s report to Mother, E.T. returned home. Mother informed E.T. of J.T.'s disclosure. E.T. reported that Gaines began having sex with her when she was eight or nine years old at his home. Gaines would pick E.T. up to take her to school but would instead take her to his house where he forced her to have sex with him, to look at "gross" magazines, to take off her clothes, and to allow Gaines to take pictures of her naked. E.T. was interviewed at the Children's Advocacy Center in Columbia. Her interview was also videotaped.

Gaines was charged with two counts of first degree child molestation and two counts of first degree statutory sodomy. After a jury trial, Gaines was found guilty on both counts of child molestation and one count of statutory sodomy. Gaines was sentenced to concurrent terms of ten years imprisonment on the two counts of child molestation and a consecutive term of fifteen years imprisonment on the statutory sodomy. Gaines appeals.

■ Preliminarily, we note Gaines's failure to comply with Rule 84.04 throughout

his brief. In particular, the points relied on are numbered and separated differently throughout the brief. There are six points listed in the table of contents, nine points listed in the summary of points relied on, and six points addressed in the argument section. The contentions in the points vary, leaving this court to discern which point in the argument section relates to which point in the summary of points relied on. Further, each point fails to comply with Rule 84.04(d) as each fails to state the legal reason for the claim or explain why, in the context of the case, the legal reason supports the claim. Gaines's failure to comply with the requirements of Rule 84.04 is a sufficient basis to dismiss his appeal. *Moreland v. Div. of Employment Sec.*, 273 S.W.3d 39, 41 (Mo.App. W.D.2008). However, we offer our analysis *ex gratia.*

### Point I

For his first point, Gaines asserts that the trial court erred in limiting the scope of Gaines's cross-examination of Mother to topics raised on direct examination.

#### *Standard of Review*

■ The trial court has broad discretion in deciding the scope of cross-examination. *State v. Watts,* 919 S.W.2d 287, 291 (Mo.App. W.D.1996). We will not interfere absent a clear abuse of discretion. *Id.* "In matters involving admission of testimony, review is for prejudice, not mere error. Reversal will result only if error was so prejudicial that it deprived defendant of a fair trial." *Id.* at 292.

#### *Analysis*

■ Section 491.070 [1] provides that "[a] party to a cause, civil or criminal, against whom a witness has been called and given some evidence, shall be entitled to cross-examine said witness (except where a defendant in a criminal case is testifying in his own behalf) on the entire case." "Entire case" means the whole case. *State v. Gardner,* 8 S.W.3d 66, 72 (Mo. banc 1999). The scope of cross-examination is not limited to matters covered on direct examination and may cover all matters within a fair purview of the direct examination. *Watts,* 919 S.W.2d at 291.

■ Gaines asked the following two questions on cross-examination of Mother: (1) whether Gaines had thirty-five foster children in his house, and (2) whether it was true that Mother told her son that E.T. was pregnant with Gaines's child, that E.T. had a miscarriage, and that Mother had a DNA sample proving that Gaines was the father. The State objected that these questions exceeded the scope of direct examination. The trial court sustained the objections. This was error. *Id.* Gaines argues that the trial court's error effectively denied him the ability to defend the charges against him. We disagree.

Although the trial court erred in sustaining the State's objection to the cross-examination, Gaines was not prejudiced. *See State v. Sayers,* 58 Mo. 585 (Mo. banc 1875). At trial, when the trial court sustained the State's objection, Gaines responded by stating that he could call Mother when he presented his case. When Gaines put on his defense, his first witness was Mother. Gaines specifically inquired of Mother about the fact that she had been adopted by Gaines. Gaines had every opportunity to question Mother regarding his history as a foster parent to thirty-five children. However, he failed to do so. Gaines did call other witnesses who testified about his history as a foster parent.

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

Gaines elected not to inquire of Mother when on the stand as his witness about her alleged statements to her son about E.T.'s claimed pregnancy. However, Gaines did call Mother's son as a witness. Son testified that Mother had told him that E.T. was pregnant with Gaines's child, that the pregnancy resulted in a miscarriage, and that Mother had a DNA sample proving that Gaines was the father.[2]

Gaines was thus able through his case-in-chief to present evidence on the only two subjects on which he had been denied the opportunity to cross-examine Mother. Gaines suggests no other subject matters about which he would have cross-examined Mother but for the trial court's error in sustaining the State's objection. Although Gaines concedes that he was able to present evidence on the two subjects on which he was unable to cross-examine Mother, Gaines maintains that there in an intangible value to the cross-examination of witnesses as it relates to their credibility.[3] However, given the nature of the subject matters here, and the fact that Gaines concedes that all of the evidence he sought to introduce was put into evidence as a part of his case-in-chief, and argued to the jury during Gaines's closing, we can discern no basis to conclude that Gaines's inability to cross-examine Mother on the two subject matters identified prejudiced his defense.

The Supreme Court addressed a similar situation in *Sayers* and held that the trial court erred in precluding the defendant from cross-examining a witness on the basis that it exceeded the scope of direct examination. *Id.* at 586. However, the Supreme Court held the defendant was not prejudiced, as he called the witness during his case-in-chief and elicited all of the evidence that had been sought during cross-examination. *Id.*

Similarly, Gaines obtained all of the evidence he sought on cross-examination during his case-in-chief. Gaines was not denied his defense. Gaines was not prejudiced by the trial court's erroneous ruling. Point one is denied.

### Point II

For his second point, Gaines asserts that the trial court erred in admitting the videotaped interview of J.T. at the Children's Advocacy Center. Gaines claims the videotape denied him his right to confrontation, was inadmissible hearsay, and improperly bolstered J.T.'s live testimony at trial.

At trial, Gaines objected to the admission of the videotaped interview by stating, "I object to it. I don't believe there's an indicia of reliability to this out-of-court statement." Although Gaines did not specifically state his objection was a hearsay objection, we find the objection was sufficiently specific to apprise the trial court that inadmissible hearsay was the basis for the objection, particularly in light of the trial court's previous finding at a pre-trial hearing that the videotaped interview had sufficient indicia of reliability to be admissible hearsay. *State v. Mattic*, 84 S.W.3d 161, 168 (Mo.App. W.D.2002). However, the hearsay objection is the only objection that was preserved for appellate

---

**2.** The statements attributed to Mother were not truthful.

**3.** Gaines relies on *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), a case referenced in oral argument, although not cited in his brief. *Delaware* is distinguishable. The State does not contend, nor do we suggest, that Gaines had an obligation to demonstrate that the trial court's error was outcome determinative. Having said that, Gaines was obliged to demonstrate meaningful prejudice by virtue of the error. He has not done so.

review. *Id.* " 'The grounds asserted on appeal are limited to those stated at trial.' " *Id.* (citation omitted). Gaines may not broaden the objection or rely on a different theory than asserted at trial. *Id.*

**Standard of Review**

■ With respect to Gaines's claim that J.T.'s videotaped interview was not admissible hearsay, the trial court's decision to admit the testimony is reviewed for abuse of discretion. *State v. Sprinkle,* 122 S.W.3d 652, 658 (Mo.App. W.D.2003).

■ Gaines's arguments that the admission of the videotaped interview violated his right to confrontation and improperly bolstered J.T.'s testimony were not raised at trial and, therefore, were not preserved. *Mattic,* 84 S.W.3d at 168. These arguments are only subject to plain error review. "Review of plain error under Rule 30.20 involves a two-step process. First, we must determine if the claim on its face establishes substantial grounds to find that manifest injustice or miscarriage of justice has resulted." *State v. Lewis,* 243 S.W.3d 523, 525 (Mo.App. W.D.2008) (citation omitted). Not all prejudicial error can be deemed plain error. *State v. Calhoun,* 259 S.W.3d 53, 58 (Mo.App. W.D. 2008). "Plain error is evident, obvious, and clear error." *Id.* If plain error is evident on the face of the claim, then we may proceed to consider whether or not a miscarriage of justice or manifest injustice will occur if left uncorrected. *Lewis,* 243 S.W.3d at 525. Where no plain error appears on the face of the claim, we should decline to exercise our discretion to review the claim. *Id.*

**Analysis**

**(i) Inadmissible Hearsay**

Gaines argues that although section 491.075 provides for an exception to the hearsay rule allowing admission of an out-of-court statement of a child witness under the age of fourteen, J.T.'s videotaped interview does not qualify for the exception because it lacked sufficient indicia of reliability. We disagree.

■ Section 491.075 provides a hearsay exception in child sexual abuse cases which states:

1. A statement made by a child under the age of fourteen relating to an offense under chapter 565, 566, 568 or 573, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide *sufficient indicia of reliability;* and

(2)(a) The child testifies at the proceedings.

*Sprinkle,* 122 S.W.3d at 660–61 (emphasis added). To determine the reliability of a child's out-of-court statements for the purposes of this section, Missouri courts look to the totality of the circumstances. *Id.* at 661. In making this determination, the following non-exclusive factors are considered: "(1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) the lack of motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age." *Id.* "The lapse of time between when the acts occurred and when the victim reported them is also a factor to consider." *Id.* "The trial court decides whether or not to admit the victim's out-of-court statements based on the information provided at the hearing." *Id.*

Here, the trial court held a pre-trial hearing to consider the admission of the videotaped interviews of J.T. and of E.T. After viewing the tapes and receiving testimony from the interviewers, the trial court found that J.T.'s videotaped interview was admissible but that the videotaped interview of E.T. was not, as it lacked sufficient indicia of reliability.

■■■ Gaines argues that J.T.'s videotaped interview also lacked sufficient indicia of reliability because it was contradicted by testimony presented at trial from J.T. and other witnesses. Gaines argument fails because it is based solely on evidence presented at trial, not evidence presented at the pre-trial hearing. *Id.* (holding that trial court must decide whether to admit statements based on the evidence produced at the section 491.075 hearing). The evidence presented at the pre-trial hearing reflects that J.T. informed the interviewer of the abuse spontaneously and unprompted, J.T. consistently described the details of the abuse, J.T. stated she knew the difference between the truth and a lie, and that J.T. was telling the truth. The totality of the circumstances indicates that J.T.'s statements had sufficient indicia of reliability. The trial court did not abuse its discretion in admitting J.T.'s videotaped interview.

### (ii) Right of Confrontation

■■■ Gaines's claim that the admission of the tape *after* J.T. testified live during the trial violated his right of confrontation is without merit. Criminal defendants have the right to confront witnesses against them pursuant to the Confrontation Clause of the Sixth Amendment, made applicable to states through the Fourteenth Amendment. *Id.* at 660. J.T. testified at trial. Gaines had the opportunity to confront her. There are no temporal restraints on the declarant's appearance at trial to satisfy the Confrontation Clause as long as the declarant appears and is available for cross-examination at any point during the trial. *Crawford v. Washington,* 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Prior to J.T.'s live testimony at trial, Gaines was aware of the content of her videotaped interview and that the State had been authorized by the trial court to admit the interview pursuant to section 491.075. Gaines had the opportunity to confront J.T. about the taped statement and, in fact, actually questioned J.T. regarding her taped statement during cross-examination. Gaines's argument that his constitutional right to confront witnesses has been denied is without merit. We thus find no evident, obvious, or clear error to warrant plain error review.

### (iii) Improper Bolstering

■■■ Similarly, Gaines's claim that the admission constituted improper bolstering of J.T.'s testimony is also without merit. Improper bolstering occurs when out-of-court statements are offered solely to duplicate or corroborate trial testimony. *State v. Holmquest,* 243 S.W.3d 444, 449 (Mo.App. W.D.2007). Statements admitted pursuant to section 491.075 do not improperly bolster the victim's trial testimony where they are informal and not planned as a substitute for trial testimony and, therefore, do not have the effect of duplicative testimony. *State v. Bunch,* 289 S.W.3d 701, 705 (Mo.App. S.D.2009). "A child victim's out-of-court statements possess unique strengths and weaknesses and are distinct evidence from the child's trial testimony." *Id.* at 706. Gaines fails to identify any portions of the recording he claims to be improper but merely summarily concludes that the videotape was offered for the purpose of letting the jury hear from J.T. a second time. This bare

allegation is insufficient to demonstrate a right to relief. *Id.* There is no evident, obvious, or clear error, and therefore, we will not afford Gaines's contention plain error review.

The trial court did not abuse its discretion in admitting the videotaped interview of J.T. Point two is denied.

### Point III

For his third point, Gaines asserts that the trial court erred in admitting the expert testimony of Joyce Estes. Gaines contends that the trial court erred in admitting Estes's testimony because it: (1) lacked sufficient factual foundation in that her testimony was based on her review of J.T.'s videotaped statement and the police reports and not on actual contact with J.T.; and (2) invaded the province of the jury.

***Standard of Review***

■■■■ We review a trial court's decision whether to admit evidence for an abuse of discretion. *State v. Allen*, 274 S.W.3d 514, 520 (Mo.App. W.D.2008). The same standard of review governs the admission of expert testimony. *Id.* " 'A trial court's decision to admit evidence is an abuse of discretion when it is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.' " *Id.* (citation omitted).

***Analysis***

The State called Estes to testify regarding why some children delay in reporting abuse and why some children maintain contact with their abuser. Prior to Estes taking the stand, Gaines objected stating, "I anticipate she will testify to two things. One, why the kids report late. She will try to get this in, that kids tell the truth. I'll object to anything about her vouching

for the truthfulness of other children." The trial court deferred ruling on the objection but noted that Gaines put everyone on notice. After Estes testified to her credentials, the State asked her, "Can you tell us why some children delay in disclosing abuse?" Gaines objected stating, "I would object to her testifying. Her knowledge of this goes to one video. She hasn't done anything and she's going to testify in a general manner why kids report late and not about this case, why this child might have reported late." The trial court overruled the objection and stated, "I'll overrule. There's been demonstration of sufficient foundation to show [Estes] has the educational background to testify, and based on her knowledge and working with abused children [sic]. And she can testify in general [sic] why children might report late."

■■■■ In his motion for judgment of acquittal or in the alternative, motion for new trial, Gaines claims that the trial court erred in admitting Estes's testimony *only* on the basis that there was insufficient foundation for the testimony. In his post-trial motion, Gaines did not allege that the trial court erred in admitting the testimony of Estes's on the basis that it invaded the province of the jury. Thus, Gaines's argument that Estes's testimony invaded the province of the jury was not preserved for appeal. *State v. Pennington*, 24 S.W.3d 185, 188 (Mo.App. W.D.2000). Gaines unpreserved argument is nonetheless disposed of by our analysis of Gaines's alternative contention that Estes's testimony lacked foundation.

In child molestation cases, there are typically two types of expert testimony: generalized and particularized. An expert gives generalized testimony when [she] describes the general behaviors and characteristics commonly found in children who have been abused. This

type of evidence is admissible. On the other hand, an expert gives particularized testimony when [she] gives testimony regarding the specific victim's credibility. This type of evidence is inadmissible because it usurps the jury's province to determine the credibility of witnesses.

*State v. D.W.N.*, 290 S.W.3d 814, 817 (Mo. App. W.D.2009) (citations omitted).

■ At trial, the State established that Estes had been the executive director of the Northwest Missouri Children's Advocacy Center for five years and had worked there for fifteen as a counselor. Estes testified regarding her professional memberships and her educational background. Estes testified that she is a licensed clinical social worker and that her specialty is in child abuse. Estes testified that she had been working with child abuse for twenty five years and has had over 600 hours of specialized training. She explained in a general way some of the reasons why children delay in reporting abuse and the disclosure process. Estes thus only offered generalized testimony. She did not attempt to provide particular testimony about why J.T. delayed in her reports. Gaines's objection that Estes's testimony lacked foundation because she had not actually talked with J.T. is, therefore, without merit, as the objection incorrectly presumed the intent of Estes's testimony was to provide a specific explanation about why J.T. delayed reporting her abuse. A specific discussion with J.T. was not required to establish foundation for Estes's generalized testimony. Moreover, as Estes offered no specific testimony about why J.T. delayed reporting, her testimony did not usurp the jury's province to determine the credibility of witnesses. Gaines's arguments are without merit.

The trial court did not abuse its discretion in admitting the expert testimony of Estes. Point three is denied.

## Point IV

For his forth point, Gaines asserts that the trial court erred in denying his motion for judgment of acquittal at the close of the State's evidence. This point is denied as it was waived by Gaines.

■ A defendant waives any claim of error in the denial of his motion for judgment of acquittal at the close of the State's evidence when he subsequently presents evidence on his behalf. *State v. May*, 71 S.W.3d 177, 182 (Mo.App. W.D.2002).

Here, after the State presented its case, Gaines filed his motion for judgment of acquittal at the close of State's evidence. When his motion was denied, Gaines proceeded to present evidence in support of his case. By doing so, Gaines effectively waived any claim of error in the trial court's denial of his motion for judgment of acquittal at the close of the State's evidence.

As Gaines waived this claim of error, Point four is denied.

## Point V

For his fifth point, Gaines alleges that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence. Gaines alleges that: (1) the State failed to prove a necessary element of Count I, in that the State did not introduce sufficient evidence to establish that Gaines had "sex" with E.T.; (2) the evidence was insufficient to establish the location, date, time, and specific conduct of Gaines; (3) J.T. did not make an in-court identification of Gaines; and (4) there was no evidence that Gaines committed the

alleged acts for the purpose of gratifying his own sexual desire.[4]

### Standard of Review

"In determining the sufficiency of the evidence, all evidence and inferences reasonably drawn from the evidence are viewed in the light most favorable to the verdict, and contrary evidence and inferences are disregarded." *Id.* at 183. Our review of the sufficiency of the evidence is limited to determining whether the evidence was sufficient for reasonable jurors to have found the defendant guilty beyond a reasonable doubt. *Id.* "Credibility of witnesses and inconsistencies in testimony are for the jury to consider." *Id.*

### Analysis

#### (i) Count I

In Count I, Gaines was charged with child molestation of E.T. in the first degree. Pursuant to section 566.067, "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." "Sexual contact" is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." Section 566.010(3).

E.T. testified that Gaines forced her to have sex. E.T. testified that Gaines raped her, that Gaines touched her vagina with his hands and penis, and that "it was my first time and grandpa took that."

Gaines concedes that E.T.'s testimony that Gaines touched her vagina with his hand and with his penis meets the statutory definition of sexual contact. However, Gaines contends that E.T.'s testimony required corroboration, and, standing alone, was insufficient to support his conviction, because E.T. gave contradictory descriptions as to what constituted "having sex." We disagree.

As we stated above, the "[c]redibility of witnesses and inconsistencies in testimony are for the jury to consider." *May*, 71 S.W.3d at 183. Moreover, "[g]enerally, in sexual offense cases the victim's testimony alone is sufficient to sustain a conviction even if uncorroborated." *Sprinkle*, 122 S.W.3d at 666. Gaines offers no authority for the proposition that merely because E.T.'s testimony about what constitutes "having sex" was inconsistent, her uncorroborated testimony about Gaines's conduct that did fall within the statutory definition of "sexual contact" could not independently support his conviction. We conclude that E.T.'s testimony was sufficient to support Gaines's conviction of child molestation in the first degree. Any inconsistencies in E.T.'s testimony were to be weighed by the jury as it assessed E.T.'s credibility.

#### (ii) Venue/Evidence of Specific Conduct

Gaines contends that the evidence was insufficient to establish location, date, time, and specific conduct of Gaines. Gaines claims: (1) that the evidence was insufficient to find that Gaines engaged in criminal conduct in Atchison County, Missouri; (2) that E.T.'s testimony was inconsistent with regard to her description of sex and that E.T. never specified which town she lived in or where the acts occurred; and (3) that J.T.'s testimony was vague and inconsistent regarding whether or not Gaines penetrated her and that J.T. did not testify to a specific date when the

---

4. In arguing this point, Gaines relies solely on the argument he set forth in support of point four. We thus address that argument in our analysis of point five.

abuse occurred. These claims are without merit.

Although Gaines frames the first part of this argument in terms of the sufficiency of the evidence, in fact, Gaines is attempting to inject an unpreserved, waived venue argument. The Supreme Court addressed a similar issue in *State v. Taylor*, where it stated, "[v]enue is not 'jurisdictional.' Venue is not an element of the offense. An objection to venue must be presented, and ruled on, prior to trial." 238 S.W.3d 145, 146 (Mo. banc 2007). In *Taylor*, the victim testified that Taylor raped her in the city of St. Louis but that she was unsure of the exact location. *Id.* at 147. The Court held that location is not an essential element of the crime of forcible rape. *Id.* at 148. Thus, the State did not need to prove location beyond a reasonable doubt. *Id.* In so finding, the Court noted that correct venue is an important procedural right provided by the Missouri Constitution. *Id.* at 149. However, the venue requirement is not absolute and can be waived. *Id.* Similarly, if Gaines believed the venue for his trial was incorrect, then he was· required to timely object. *Id.* A case can be tried even though venue is otherwise incorrect. *Id.* As in *Taylor*, location is not an essential element to the crime of child molestation in the first degree or statutory sodomy in the first degree. The State was not required to prove Gaines's conduct occurred in Atchison County. Because Gaines failed to challenge venue prior to trial, his objection is waived and is not preserved for our review.

In any event, the record reflects that J.T. testified that the conduct occurred in the bedroom of Gaines's house in Tarkio and in the basement bedroom and bathroom of Gaines's house in Fairfax. J.T. testified that Gaines molested her more than once in Tarkio. E.T. testified

that Gaines had sex with her and raped her at his house in Fairfax when she was nine or ten. E.T. also testified that Gaines had sex with her in a town which started with a "T" and in Rockport. All three of these towns are located in Atchison County, Missouri. As such, Gaines's claim that the record fails to support that he committed criminal conduct in Atchison County is without merit.

In addition to improvidently arguing venue, Gaines claims there was insufficient evidence of his specific conduct. Gaines reargues that E.T.'s testimony was inconsistent. We have already addressed this allegation and concluded that any inconsistencies in E.T.'s testimony were to be weighed by the jury. Gaines also argues that J.T. inconsistently testified about whether he penetrated her. The alleged inconsistencies in J.T's testimony regarding penetration were also properly submitted to the jury for its consideration. *May,* 71 S.W.3d at 183. In any case, penetration is not a required element of the offense of child molestation in the first degree or statutory sodomy in the first degree. J.T.'s inconsistent testimony on this point did not involve, therefore, an essential element of the crimes with which Gaines was charged.

Finally, Gaines objects that neither J.T. nor E.T. testified about specific dates on which their abuse occurred. However, time is not essential in child sexual abuse cases because it can be impossible to ascertain specific dates of the sexual abuse, particularly when, as here, there is a continuous series of abusive acts. *Sprinkle,* 122 S.W.3d at 660. The State need only prove the offense was committed on any day before the date of the information and within the period of limitation. *Bunch,* 289 S.W.3d at 703.

### (iii) In-court Identification of Gaines

■ Gaines contends that the judgment convicting him of counts II and IV (those relating to J.T.) should be reversed because J.T. did not make an in-court identification of Gaines. His argument is without merit.

> The evidence at trial must show defendant was the person who committed the crime, but an in-court identification is not always required. The procedure used at trial to identify the defendant is left to the discretion of the trial court. Each case must be examined on its own facts looking at the totality of the circumstances.

*State v. Baker*, 23 S.W.3d 702, 708 (Mo. App. E.D.2000) (citations omitted) (where victim never physically indicated defendant's presence in the courtroom, but there was sufficient evidence to identify defendant as the accused).

■ Although J.T. did not identify Gaines by pointing at him, when asked if Gaines was in the courtroom, J.T. responded that he was and identified him as wearing stripes. Further, E.T. pointed at Gaines when she identified him. Mother also identified Gaines as did several of his own character witnesses. Looking at the totality of the circumstances we find no ambiguity as to Gaines's identity.

### (iv) Arousing or Gratifying the Sexual Desire of Any Person

Gaines contends that there was insufficient evidence that the alleged acts were done with the purpose of arousing or gratifying his sexual desire. Although Gaines quotes the language of the applicable statute correctly requiring conduct engaged in "for the purpose of arousing or gratifying the sexual desire of *any* person," Gaines incorrectly argues that the purpose of *his* gratification was a necessary element of the crimes charged.

Pursuant to section 566.067, "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." "Sexual contact" is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of *any* person." Section 566.010(3) (emphasis added). "A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." Section 566.062. "Deviate sexual intercourse" is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of *any* person or for the purpose of terrorizing the victim." Section 566.010(1) (emphasis added).

■ Sections 566.010(1) and (3) do not require proof that the culpable conduct was engaged in for the purpose of the defendant's gratification. Rather, there need only be evidence that the culpable conduct was engaged in for the purpose of someone's gratification. *See In the Interest of J.A.H.*, 293 S.W.3d 116, 121 (Mo. App. E.D.2009) (no evidence that conduct was for the defendant's *or* victim's arousal or gratification); *State v. McMeans*, 201 S.W.3d 117, 121 (Mo.App. S.D.2006) (sufficient evidence that defendant's conduct was for the purpose of arousing or gratifying the sexual desire of 22–month old victim). Gaines's gratification was not an element that the State was required to

prove. As such, Gaines's point is without merit.

Even if Gaines's argument could be construed as a contention that there was insufficient evidence his conduct was engaged in for the purpose of gratifying *any* person, his claim would fail. Intent is derived from a defendant's mental state and is usually inferred from circumstantial evidence. *State v. Love,* 134 S.W.3d 719, 722 (Mo.App. S.D.2004). The language "for the purpose of arousing or gratifying sexual desire" is meant "to exclude innocent contacts from being deemed criminal conduct." *Id.* at 723. In assessing this intent, a fact-finder looks at the circumstances of the particular case. *Id.*

At trial, E.T. testified that Gaines made her look at "gross" magazines, books and pictures, requested that she take off her clothes, took pictures of her naked and told her not to tell anyone. J.T. testified that Gaines also told her not to tell and that if she did, her Mother would go to jail. J.T. testified that during the alleged conduct that Gaines would ask her, "Does that feel good?" Such conduct clearly indicates that Gaines intent was not innocent. There was sufficient evidence from which the jury could have found beyond a reasonable doubt that Gaines's conduct was for the purpose of sexual gratification.

Point five is denied.

## Point VI

For his sixth and final point, Gaines contends that the circuit court erred in overruling his objection to the State's rebuttal argument because the State argued facts that were not in evidence. In particular, Gaines complains that the State improperly made reference to the nature and frequency of Mother's contact with E.T.

### Standard of Review

The trial court has broad discretion in controlling closing argument, and we review the trial court rulings during closing argument for abuse of discretion. *State v. Forrest,* 183 S.W.3d 218, 226 (Mo. banc 2006). " '[C]ounsel is traditionally given wide latitude to suggest inferences from the evidence on closing argument.' " *Nelson v. Waxman,* 9 S.W.3d 601, 606 (Mo. banc 2000) (quoting *Moore v. Mo. Pac. R.R. Co.,* 825 S.W.2d 839, 844 (Mo. banc 1992)). "This is so 'even though the inferences drawn are illogical or erroneous.' " *Id.* (citations omitted).

### Analysis

In its rebuttal, the State argued: [E.T.] spends, at a minimum, 10 out of every 14 days in Fulton, Missouri, far away from the influence of her mother. You saw what the communication was like between her and I. Is there any evidence the communication was better between her and [Mother].

Gaines objected that the State's argument improperly commented on Mother's inability to influence E.T. to wrongfully accuse Gaines because the argument was unsupported by the evidence. The objection was overruled by the trial court.

The State's rebuttal was supported by the evidence. The record reflects that both J.T. and E.T. testified that E.T. only came home on some weekends and that the rest of the week E.T. was at the Missouri School for the Deaf in Fulton.

Moreover, the State's argument was directly responsive to Gaines's theory of defense that Mother manipulated E.T. to make accusations against Gaines. The State is entitled to contest a theory suggested by the defendant. *State v. Sanchez,* 186 S.W.3d 260, 265 (Mo. banc 2006) (the State has considerable leeway to make

retaliatory arguments at closing and may retaliate to an issue raised by the defense even if the prosecutor's comment would be improper).

The State's closing argument was not improper. It was supported by the evidence and it rebutted the defense's argument that Mother improperly manipulated her children. The trial court did not abuse its discretion in overruling Gaines's objection. Point six is denied.

### Conclusion

We affirm the judgment of the trial court.

All concur.